UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------- x
JAGDESHWAR SUKAR,                                :
                                                 :
                Plaintiff,      :
                                                 :   REPORT AND
                                                 :   RECOMMENDATION
   -against-                                    :
                                                 :   No. 22-CV-3607-MKB-JRC
                                                 :
MAHENDRA RAMKELLAWAN,                            :
                                                 :
                Defendant.      :
------------------------------------------------------------------- x

JAMES R. CHO, United States Magistrate Judge:

## Introduction

Plaintiff Jagdeshwar Sukar ("Plaintiff") commenced this action pursuant to Article 53 of the New York Civil Practice Law and Rules seeking to enforce a foreign judgment against defendant Mahendra Ramkellawan ("Defendant"). *See* Dkt. 1 ("Compl."). Plaintiff invokes this Court's diversity jurisdiction pursuant to 28 U.S.C. § 1332. *See id.* ¶ 3. Defendant has failed to respond to the Complaint or otherwise appear in this case. Before the undersigned, on referral from the Honorable Margo K. Brodie, is Plaintiff's second motion for default judgment against Defendant seeking to have the foreign judgment recognized in New York. *See* Motion, Dkt. 13 ("Mot."). For the reasons set forth below, this Court recommends *sua sponte* dismissal of the Complaint for lack of subject-matter jurisdiction.

## Background

Plaintiff brings this action to enforce a foreign judgment rendered by the High Court of the Supreme Court of Judicature in Guyana (the "Guyana Judgment"). On February 26, 2015, Plaintiff and Defendant entered an agreement stating that Plaintiff would lend Defendant a sum of money to organize and promote a production called "Return of the Clash of the Titans." *See*

Compl. ¶ 10; *see also* Dkt. 1-2. To repay the loan pursuant to the agreement, Defendant was to pay Plaintiff the sum of 7 million Guyanese dollars ("GYD") by March 15, 2015. *See* Compl. ¶ 10. Defendant failed to repay Plaintiff by the deadline, and on February 24, 2016, Plaintiff commenced an action in the Guyana court seeking to recover the money owed under the contract. *Id.* ¶¶ 13–14.

The Guyana court ruled in favor of Plaintiff and awarded Plaintiff a sum of 7 million Guyanese dollars, with interest at six percent per year from February 24, 2016 to January 15, 2019 (pre-judgment interest) and thereafter at a rate of four percent per year until fully paid (post-judgment interest). *See id.* ¶ 16. The court also awarded Plaintiff 50,000 Guyanese dollars in costs. *See id.*; *see also* Dkt. 1-5 ("Guyana Court Order").

On June 17, 2022, Plaintiff filed a Complaint in this Court seeking to enforce the Guyana Judgment pursuant to Article 53 of New York Civil Practice Law and Rules. *See* Dkt. 1. On August 10, 2022, Defendant was served with the Summons and Complaint, *see* Dkt. 7, but failed to answer or otherwise appear in the action. On December 16, 2022, Plaintiff requested a certificate of default, *see* Dkt. 9, and the Clerk entered Defendant's default on December 19, 2022, *see* Dkt. 10. On January 4, 2023, Plaintiff filed his first motion for default judgment against Defendant, *see* Dkt. 11, but the undersigned denied the motion with leave to refile for failure to comply with this Court's local rules, *see* Order dated March 13, 2023. On April 28, 2023, Plaintiff filed a second motion for default judgment, *see* Dkt. 13 ("Mot."), which the Honorable Margo K. Brodie referred to the undersigned for a report and recommendation, *see* Order dated May 11, 2023.

At a conference held on November 15, 2023, the Court raised the question of whether it has subject-matter jurisdiction over the state-law claim that forms the basis of this suit, noting

2

that the value of the Guyana Judgment, when converted into U.S. dollars, is worth less than the jurisdictional minimum of $75,000. *See* Minute Entry dated November 15, 2023. In response, Plaintiff filed a supplemental brief specifically addressing the amount in controversy. *See* Dkt. 17 ("Supp. Br.").

**Discussion**

"[F]ederal courts are courts of limited jurisdiction." *Owen Equip. & Erection Co. v. Kroger*, 437 U.S. 365, 374 (1978). Accordingly, "subject-matter jurisdiction, because it involves a court's power to hear a case, can never be forfeited or waived." *United States v. Cotton*, 535 U.S. 625, 630 (2002). Courts therefore "have an independent obligation to determine whether subject-matter jurisdiction exists, even in the absence of a challenge from any party." *Arbaugh v. Y&H Corp.*, 546 U.S. 500, 514 (2006). If subject-matter jurisdiction is lacking, "the court has the duty to dismiss the action *sua sponte*." *Durant, Nichols, Houston, Hodgson & Cortese-Costa P.C. v. Dupont*, 565 F.3d 56, 62 (2d Cir. 2009); *see also* Fed. R. Civ. P. 12(h)(3) ("If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action.").

"Whether a foreign judgment is domestically enforceable is a matter of state law." *Tropp v. Corp. of Lloyd's*, 385 F. App'x 36, 37 (2d Cir. 2010) (citing Fed. R. Civ. P. 69(a)(1)). No federal statute governs this enforcement action.[1] Accordingly, Plaintiff brings this case in federal court pursuant to the Court's diversity jurisdiction. Compl. ¶ 3. A federal court has subject-matter jurisdiction based on diversity if the parties are completely diverse in their states

---

[1] Although Plaintiff makes a passing reference to 28 U.S.C. § 2467 as a basis for jurisdiction, *see* Compl. ¶ 1, this statute is not applicable to private actions to enforce foreign judgments. Instead, section 2467 provides jurisdiction in the federal courts when a foreign nation seeks to enforce a forfeiture or confiscation judgment in the United States. *See* 28 U.S.C. § 2467(a)-(b).

3

of citizenship and the amount in controversy exceeds $75,000, "exclusive of interests and costs." 28 U.S.C. § 1332(a). "A party invoking the jurisdiction of the federal court has the burden of proving that it appears to a *reasonable probability* that the claim is in excess of the statutory jurisdictional amount." *Tongkook Am., Inc. v. Shipton Sportswear Co.*, 14 F.3d 781, 784 (2d Cir. 1994) (emphasis added). "The amount in controversy is determined at the time the action is commenced." *Id.* This Circuit recognizes "a rebuttable presumption that the face of the complaint is a good faith representation of the actual amount in controversy." *Scherer v. Equitable Life Assurance Soc'y of U.S.*, 347 F.3d 394, 397 (2d Cir. 2003) (citation omitted). To overcome the presumption, the face of the complaint must show "to a legal certainty" that the claim is for less than the jurisdictional minimum. *St. Paul Mercury Indem. Co. v. Red Cab Co.*, 303 U.S. 283, 289 (1938); *see Tongkook*, 14 F.3d at 784.

While Plaintiff alleges that the parties are diverse, *see* Compl. ¶¶ 6–7, Plaintiff has not shown to a "reasonable probability" that he can recover more than $75,000. Plaintiff seeks recognition of the Guyana Judgment; a judgment in this Court awarding the amount owed under the Guyana Judgment; and attorneys' fees and costs, which are excluded from the amount in controversy calculation. *See* Compl. at ECF page 8 (Prayer for Relief).[2] "The party seeking recognition of a foreign money judgment must ask for no new relief against the judgment debtor, but instead merely ask the court to perform its ministerial function of recognizing the foreign country judgment and converting it into a New York judgment." *Banca Di Credito Cooperativo di Civitanova Marche e Montecosaro Soc. Cooperativa v. Small*, 852 F. App'x 15, 17 (2d Cir. 2021) (internal quotations and citations omitted). Accordingly, the amount in controversy here is

---

[2] References to the page numbers generated by the Court's electronic case filing system appear as "ECF page."

4

definitive: it can be no more than the amount owed pursuant to the Guyana Judgment, inclusive of interest and costs awarded therein.[3] Based on the face of Plaintiff's Complaint, the amount in controversy falls far short of the $75,000 threshold.

## I.   Interest Calculations

Because the amount in controversy includes interest on the Guyana Judgment, the Court must determine the number of days during which the interest accrued. As set forth in the Guyana Court Order, pre-judgment interest at the rate of 6 percent per annum accrued from February 24, 2016 to January 15, 2019, while post-judgment interest at the rate of 4 percent per annum continues to accrue from January 16, 2019 until the judgment is fully paid. *See* Supp. Br., Dkt. 17, at ECF page 3; *see also* Guyana Court Order, Dkt. 1-5, at ECF page 1.

Under the "time-of-filing rule," courts "measure the amount in controversy as of the date of the complaint." *Scherer*, 347 F.3d at 397; *see also Tongkook*, 14 F.3d at 784. Accordingly, for purposes of determining the jurisdictional amount, the Court accounts for the post-judgment interest that accrued up until the date the Complaint in this action was filed (*i.e.*, June 17, 2022). *See Majestic Int'l Pictures*, 1989 WL 135876, at *2 (determining amount in controversy by adding value of Arkansas judgment with fees and interest owed "at the time of the present complaint").

As Plaintiff specifies in his supplemental brief, the interest on the judgment is calculated by multiplying the principal by the interest rate over time (Interest = Principal x Rate x Time).

---

[3] When enforcing the judgments of other states and territories, courts in this Circuit have held that "if the judgment . . . provides for interest, the computation of the amount in controversy in a suit on the judgment includes the interest." *San Juan Hotel Corp. v. Greenberg*, 502 F. Supp. 34, 35 (E.D.N.Y.), *aff'd*, 646 F.2d 562 (2d Cir. 1980); *see also Majestic Int'l Pictures, Inc. v. Regal Video, Inc.*, No. 89-CV-0004, 1989 WL 135876, at *2 (S.D.N.Y. Nov. 6, 1989). The undersigned concludes that the same reasoning should apply to interest owed pursuant to the judgment of a foreign nation.

5

*See* Supp. Br., Dkt. 17, at ECF page 3.

To determine the amount of pre-judgment and post-judgment interest accrued as of the time the Complaint was filed, the Court performed the calculations described below. *See, e.g., Freedom Mortg. Corp. v. Weisblum*, No. 19-CV-2033, 2020 WL 5881235, at *8 (E.D.N.Y. Aug. 19, 2020) (describing method for calculating interest), *report and recommendation adopted as modified*, 2020 WL 5878262 (E.D.N.Y. Oct. 2, 2020).[4]

### A.     Pre-judgment interest amount

To calculate the per diem interest amount for the pre-judgment interest owed, the Court performed the following calculation:  the amount due from February 24, 2016 through January 15, 2019, multiplied by the per annum interest rate of 0.06, then divided by 365.  Therefore, the per diem pre-judgment interest amount equals 1,150.68 GYD (rounded) ((7,000,000 GYD x 0.06) / 365).

To calculate the pre-judgment interest due between February 24, 2016 and January 15, 2019, inclusive, the Court multiplied the number of days between these dates (*i.e.*, 1,057 days) by the per diem interest amount (*i.e.*, 1,150.68 GYD).  Thus, the Court performed the following calculation to reach the total interest due from February 24, 2016 through January 15, 2019: 1,057 x 1,150.68 GYD = 1,216,268.76 GYD.

---

[4] In his supplemental submission, it appears Plaintiff may have miscalculated the interest. Plaintiff calculated the number of weeks in the pre-judgment and post-judgment periods, then divided those periods by 12 instead of 52 (the number of weeks per year).  *See* Supp. Br., Dkt. 17, at ECF pages 3–4.  The Court therefore relies on its independent calculations to determine the amount of pre-judgment and post-judgment interest.

### B. Post-judgment interest amount

To calculate the per diem interest amount for the post-judgment interest owed, the Court performed the following calculation: the amount due from January 16, 2019 through June 17, 2022 (the period in which post-judgment interest began to accrue until the filing of the Complaint in this action), multiplied by the per annum interest rate of 0.04, then divided by 365. Therefore, the per diem post-judgment interest amount equals 767.12 GYD (rounded) ((7,000,000 GYD x 0.04) / 365).

To calculate the post-judgment interest due between January 16, 2019 and June 17, 2022, inclusive, the Court multiplied the number of days between these dates (*i.e.*, 1,249 days) by the per diem interest amount (*i.e.*, 767.12 GYD). Thus, the Court performed the following calculation to reach the total interest due from January 16, 2019 through June 17, 2022: 1,249 x 767.12 GYD = 958,132.88 GYD.

Based on the interest amounts calculated above, the total amount of damages Plaintiff seeks in this action is **9,224,401.64 GYD** (7,000,000 GYD (unpaid principal) + 1,216,268.76 GYD (pre-judgment interest) + 958,132.88 GYD (post-judgment interest) + 50,000 GYD (costs)).

## II. Conversion to U.S. Dollars

The time-of-filing rule likewise impacts the conversion rate used to measure the final amount in controversy. *See, e.g., Cap. Law v. Viar*, 338 F. Supp. 2d 891, 895 (W.D. Tenn. 2004) (applying foreign currency exchange rate on date complaint was filed to calculate amount in controversy).[5] However, in his damages calculations, Plaintiff relies on the conversion rate as of

---

[5] New York state follows the "judgment-day rule," which provides that courts awarding damages in a foreign currency shall convert the judgment into U.S. dollars using the prevailing exchange rate on the date judgment is entered. *See* New York Judiciary Law § 27(b). This rule, however,

the date of his supplemental submission. *See* Supp. Br., Dkt. 17, at ECF page 4. Nonetheless, "[r]egardless of the exchange rate employed, the [recovery demanded] by plaintiff [is] certainly below the $75,000 jurisdictional threshold." *Brown v. New York State Supreme Ct. for Second Jud. Dist.*, No. 09-CV-0234, 2009 WL 412131 at *3 (E.D.N.Y. Feb. 17, 2009) (alleging damages, *inter alia*, in a foreign currency; Court ordered plaintiff to show cause why case should not be dismissed for lack of subject-matter jurisdiction).

As Plaintiff notes, "[t]he conversion rate changes daily." Supp. Br., Dkt. 17, at ECF page 4. Per Plaintiff's supplemental submission, the exchange rate on November 29, 2023—the date of his supplemental submission—was 209 GYD to $1 (USD). *See id*. Even if the Court were to adopt Plaintiff's exchange rate, the amount in controversy totals only **$44,135.89** (rounded) (9,224,401.64 GYD / 209).[6]

Whether the Court uses the exchange rate set forth in Plaintiff's supplemental submission, or the exchange rate as of the date the Complaint was filed (*see* footnote 6), the value of the Guyana Judgment falls far short of the $75,000 jurisdictional threshold. Thus, the pleadings and supplemental briefing confirm to a legal certainty that Plaintiff cannot recover the jurisdictional minimum. Therefore, the undersigned recommends *sua sponte* dismissal of Plaintiff's Complaint for lack of subject-matter jurisdiction. *See Massaro v. Pitts*, No. 10-CV-0911, 2011 WL 5825139, at *2 (E.D.N.Y. Nov. 15, 2011) (*sua sponte* dismissing case to recover

---

does not apply to the amount-in-controversy analysis. *See Pariente v. Scott Meredith Literary Agency, Inc.,* 771 F. Supp. 609, 613 (S.D.N.Y. 1991) (judgment-day rule "pertains to the calculation of foreign judgments, and not to the determination of questions of federal diversity jurisdiction.").

[6] The exchange rate on June 17, 2022—the date the Complaint was filed—was approximately 209.16586 GYD to $1 (USD). *See, e.g.*, https://gyd.fxexchangerate.com/usd-2022_06_17-exchange-rates-history.html (last visited 2/27/2024). This exchange rate is virtually identical to the exchange rate used by Plaintiff. Using the approximate exchange rate as of June 17, 2022, the amount in controversy totals $44,100.90 (rounded) (9,224,401.64 GYD / 209.16586).

8

under promissory note, with attorneys' fees provided pursuant to note, because value of the note and fees fell below jurisdictional minimum); *see also Curtis Int'l Ltd. v. Ewest Advantage, Inc.*, No. 07-CV-1265, 2007 WL 2462115, at *2 (S.D. Cal. Aug. 27, 2007) (*sua sponte* dismissing action to enforce foreign judgment totaling only $74,106.18 (USD), including pre-judgment interest).[7]

## Conclusion

For the foregoing reasons, the undersigned respectfully recommends *sua sponte* dismissal of this action for lack of subject-matter jurisdiction.

A copy of this Report and Recommendation is being electronically served on counsel. Further, the Court directs Plaintiff's counsel to serve a copy of this Report and Recommendation by overnight mail and first-class mail to Defendant and to file proof of service on ECF by

---

[7] In his Supplemental Brief, Plaintiff calculates post-judgment interest from January 16, 2019 to *the present*, instead of the date the Complaint was filed. *See* Supp. Br., Dkt. 17, at ECF page 4 ("Interest is owed at the rate of 4% per annum, thereafter until paid, from January 16, 2019-*current*, which is 254.14 weeks.") (emphasis added).

Assuming the Court were to adopt Plaintiff's approach and calculate the post-judgment interest up until the date of this Report and Recommendation (rather than the date the Complaint was filed), to determine the post-judgment interest due between January 16, 2019 and February 27, 2024 (the date of this Report and Recommendation), inclusive, the Court would multiply the number of days between these dates (*i.e.*, 1,869 days) by the per diem interest amount (*i.e.*, 767.12 GYD). The Court would then perform the following calculation to determine the total interest due from January 16, 2019 through February 27, 2024: 1,869 x 767.12 GYD = 1,433,747.28 GYD.

The amount of damages, assuming the Court calculated the post-judgment interest due up until the date of this Report and Recommendation, totals 9,700,016.04 GYD (7,000,000 GYD (unpaid principal) + 1,216,268.76 GYD (pre-judgment interest) + 1,433,747.28 GYD (post-judgment interest) + 50,000 GYD (costs)). As set forth in Plaintiff's supplemental submission, on November 29, 2023, the exchange rate was approximately 209 GYD to $1 (USD). If the Court were to adopt Plaintiff's exchange rate, the amount in controversy totals **$46,411.56** (rounded) (9,700,016.04 GYD / 209). Thus, even if the Court were to include post-judgment interest up until the date of this Report and Recommendation, the amount in controversy (*i.e.*, $46,411.56) still falls far below the $75,000 threshold.

9

**March 1, 2024**.  Any objections to the recommendations made in this Report must be filed with the Honorable Margo K. Brodie within 14 days after the filing of this Report and Recommendation and, in any event, on or before **March 12, 2024**.  *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(2).  Failure to file timely objections may waive the right to appeal the District Court's order.  *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(d), 72; *Small v. Sec'y of Health & Human Servs.*, 892 F.2d 15, 16 (2d Cir. 1989) (*per curiam*) (discussing waiver under the former ten-day limit).

The Clerk is requested to enter this Report and Recommendation into the ECF system.

Dated: Brooklyn, New York
       February 27, 2024

                                            s/ James R. Cho
                                            James R. Cho
                                            United States Magistrate Judge